UNITED STATES of America,
Plaintiff–Appellee,

v.

Debra Lynn MORRIS, Defendant–
Appellant.

No. 04–7889.

United States Court of Appeals,
Fourth Circuit.

Argued: Sept. 20, 2005.

Decided: Nov. 7, 2005.

H. Hamilton, Bernard F. Sheehan, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Washington, D.C., for Appellant. Jonathan S. Gasser, United States Attorney, Columbia, South Carolina, for Appellee.

Before NIEMEYER and SHEDD, Circuit Judges, and James C. DEVER, III, United States District Judge for the Eastern District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge SHEDD wrote the opinion, in which Judge NIEMEYER and Judge DEVER joined.

## OPINION

SHEDD, Circuit Judge:

Debra Lynn Morris appeals the district court's order denying her 28 U.S.C. § 2255 motion for relief from her conviction and sentence. Morris argues that her sentence is unconstitutional under *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), because the district court increased her base offense level using facts that she did not admit and that were not found beyond a reasonable doubt by a jury. We granted a certificate of appealability to consider whether Morris may raise a *Booker* claim for the first time in her § 2255 motion when her judgment of conviction became final before the Supreme Court decided *Booker*.[1] Nine circuit courts of appeals have considered this issue and have held that *Booker* does not apply retroactively to cases on collateral review.[2] We agree with these courts,

**ARGUED:** Charles Ethan Luftig, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Washington, D.C., for Appellant. Kevin Frank McDonald, Assistant United States Attorney, Office of the United States Attorney, Columbia, South Carolina, for Appellee. **ON BRIEF:** Elaine Metlin, Laura

1. Although Morris raised other issues in this appeal, we denied her request for a certificate of appealability and dismissed the appeal as to those issues.

2. *See United States v. Cruz*, 423 F.3d 1119 (9th Cir.2005); *Padilla v. United States*, 416 F.3d 424 (5th Cir.2005) (per curiam); *Never Misses A Shot v. United States*, 413 F.3d 781 (8th Cir.2005) (per curiam); *United States v. Bella-*

*my*, 411 F.3d 1182 (10th Cir.2005); *Lloyd v. United States*, 407 F.3d 608 (3rd Cir.), *cert. denied*, No. 05–5769 (Oct. 3, 2005); *Guzman v. United States*, 404 F.3d 139 (2nd Cir.), *petition for cert. filed*, No. 05–5187 (Jul. 5, 2005); *Humphress v. United States*, 398 F.3d 855 (6th Cir.), *cert. denied*, No. 05–5130 (Oct. 3, 2005); *Varela v. United States*, 400 F.3d 864 (11th Cir.) (per curiam), *cert. denied*, No.

and we therefore affirm the district court's order.

## I

The pertinent background for this case begins with the Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Apprendi* involved a New Jersey hate crime statute that provided for an enhancement of a defendant's sentence if the sentencing court found, by a preponderance of the evidence, that the offense was committed with a purpose to intimidate an individual or group based on (among other things) that person's race. The defendant, who had fired shots into the home of an African–American family, pled guilty to a state firearm possession charge for which the maximum penalty established by New Jersey statute was ten years. However, the sentencing court found by a preponderance of the evidence that the defendant's conduct had been racially motivated, and (applying the hate crime enhancement) it therefore sentenced him to a 12–year prison term. After the sentence was affirmed by the state supreme court, the Supreme Court reversed, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. Because the defendant had not admitted a racial motivation for the shooting and the state had not proved such a motivation to a jury beyond a reasonable doubt, the Court concluded that he could not be sentenced beyond the ten-year maximum punishment set forth in the statute.

In the wake of *Apprendi,* we were presented with the issue of whether the holding of that case affected sentencing practices under the federal sentencing guidelines ("Guidelines").[3] In *United States v. Kinter,* 235 F.3d 192 (4th Cir. 2000), the district court enhanced the defendant's Guidelines offense level based on its factual findings made under a preponderance of evidence standard. Application of the enhancement increased the defendant's sentence above the maximum Guidelines sentence he could have received without the factual findings. We rejected the defendant's argument that *Apprendi* rendered sentencing practices under the Guidelines unconstitutional, concluding that "[b]ecause *Apprendi* does not apply to a judge's exercise of sentencing discretion within a statutory range, the current practice of judicial factfinding under the Guidelines is not subject to the *Apprendi* requirements—at least so long as that factfinding does not enhance a defendant's sentence beyond the maximum term specified in the substantive statute." 235 F.3d at 201.

This was the state of the law in 2002, when Morris pled guilty to conspiring to distribute oxycodone and methadone, being a felon in possession of ammunition, and retaliating against an informant. The indictment against Morris did not allege a specific drug quantity, and she did not admit to a specific drug quantity during her guilty plea. Instead, at her sentencing hearing, Morris contested the drug quanti-

05–6041 (Oct. 3, 2005); *McReynolds v. United States,* 397 F.3d 479 (7th Cir.), *cert. denied,* —— U.S. ——, 125 S.Ct. 2559, 162 L.Ed.2d 285 (2005).

**3.** The Guidelines "required the district court to make a series of factual findings about the characteristics of the defendant and of the offense, calculating the final sentence using the facts found by the jury and the facts found independently by the court prior to sentencing." *United States v. Hughes,* 401 F.3d 540, 545 (4th Cir.2005).

ty attributed to her by the government. Following an evidentiary presentation, the district court agreed with the government and found that Morris was responsible for 2,460.80 grams of prescription drugs, which resulted (after an adjustment for acceptance of responsibility) in a base offense level of 30 for the conspiracy count. Utilizing a criminal history category of IV, the district court sentenced Morris to 200 months of imprisonment on the conspiracy count. The district court sentenced Morris to concurrent 120–month terms for the other counts.

We affirmed Morris' conviction and sentence in June 2003. Pertinent to our discussion, we held that the district court's drug quantity calculation was not clearly erroneous and that Morris' claim under *Apprendi* failed because her sentence did not "exceed the statutory maximum [20 years] for convictions in which drug quantity was not alleged." *United States v. Morris*, 68 Fed.Appx. 458, 459 (4th Cir. 2003) (unpublished). Morris did not seek certiorari review of our decision.

In June 2004, the Supreme Court decided *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which involved the constitutionality of the State of Washington's determinate sentencing scheme. In *Blakely*, the defendant pled guilty to kidnapping, a felony punishable by a term of not more than ten years of imprisonment. Other provisions of Washington law, comparable to the Guidelines, mandated a sentencing range of 49 to 53 months, unless the sentencing court found aggravating facts justifying an exceptional sentence. The sentencing court found one such aggravating fact and

therefore sentenced the defendant to 90 months of imprisonment. The state court of appeals affirmed the sentence, but the United States Supreme Court reversed. Applying the rule announced in *Apprendi*, the Court set aside the defendant's sentence, holding that the imposition of the sentencing enhancement—which was based solely on the sentencing court's factual findings—violated the defendant's Sixth Amendment rights because the facts supporting the findings were neither admitted by him nor found by a jury. *Blakely*, 124 S.Ct. at 2536–38. Responding to an argument made by the United States as *amicus curiae*, the Court expressly noted that the constitutionality of the Guidelines was not at issue. *Id.* at 2538 n. 9.

After *Blakely* was decided, Morris filed her § 2255 motion raising several grounds for relief, including that her sentence is invalid under *Blakely*. While her motion was pending before the district court, we held that *Blakely* did not apply to Guidelines sentences. *United States v. Hammoud*, 378 F.3d 426 (4th Cir.2004) (en banc order).[4] Based on *Hammoud*, the district court rejected Morris' *Blakely* claim. The district court also rejected Morris' other claims, and it therefore denied her motion and granted summary judgment in the government's favor.

Morris appealed, arguing (among other reasons) that the district court erred by denying her relief on her *Blakely* claim. Shortly thereafter, the Supreme Court decided *Booker*, holding that *Blakely* applies to the Guidelines and, therefore, the Sixth Amendment is violated when a district court imposes a mandatory sentence under the Guidelines that is greater than the

---

4. In our subsequent *Hammoud* opinion, 381 F.3d 316, 345 (4th Cir.2004), we noted that the federal courts were divided on whether *Blakely* affected sentences under the Guidelines. After deciding *Booker*, the Supreme Court vacated *Hammoud* and remanded the case for further consideration. *Hammoud v. United States*, —— U.S. ——, 125 S.Ct. 1051, 160 L.Ed.2d 997 (2005).

maximum authorized by the facts found by the jury alone. *Booker*, 125 S.Ct. at 755. The Court also held, however, that two provisions of the statute creating the Guidelines system must be excised to make it compatible with the Sixth Amendment; this aspect of *Booker* makes the Guidelines advisory and their application subject to review for reasonableness. *Id.* at 764–65. Moreover, this aspect of *Booker* also requires district courts to continue making appropriate findings of fact to calculate the sentencing range prescribed by the Guidelines; thus, *Booker* ultimately did not change the procedure by which Guidelines sentencing facts are found. *See United States v. White*, 405 F.3d 208, 219 (4th Cir.2005), *petition for cert. filed*, No. 05–6891 (Oct. 13, 2005) ("In any given case after *Booker*, a district court will calculate, consult, and take into account *the exact same guideline range* that it would have applied under the pre-*Booker* mandatory guidelines regime.").

Although the Court held in *Booker* that its decision applies to all cases on direct review, 125 S.Ct. at 769, it did not address whether its decision applies to cases on collateral review. Therefore, we granted a certificate of appealability to determine "whether Morris may raise a *Blakely v. Washington* or *United States v. Booker* claim for the first time in her § 2255 motion and, thus, whether *Booker* applies retroactively to her final judgment of conviction entered before *Booker*."[5]

## II

 "When a decision of [the Supreme] Court results in a 'new rule,' that rule applies to all criminal cases still pending on direct review. As to convictions that are already final, however, the rule applies only in limited circumstances." *Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004) (citation omitted). Generally, a new procedural rule does not apply retroactively, and a federal habeas petitioner therefore ordinarily cannot rely on such a new rule on collateral review if it was handed down after the conviction and sentence became final on direct review. *Id.* at 2523.[6] An exception to this general rule of nonretroactivity exists when a new procedural rule falls within the "small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (citation and internal punctuation omitted).

We employ a three-step analysis ("the *Teague* analysis") to determine whether a new rule of criminal procedure should apply retroactively. *Beard v. Banks*, 542 U.S. 406, 124 S.Ct. 2504, 2510, 159 L.Ed.2d 494 (2004) (summarizing the analysis established by *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)). In the specific context of this case, we must first determine when Morris' conviction became final. *Beard*, 124 S.Ct. at 2510. If the conviction was final when *Booker* was decided, we must then decide if the rule announced in *Booker* is actually "new." *Beard*, 124 S.Ct. at 2510. If the

---

5. Although Morris originally based her claim on *Blakely*, her claim is for all practical purposes now governed by the intervening decision in *Booker*. *See Lloyd*, 407 F.3d at 611.

6. In contrast, a new substantive rule—*i.e.*, one that "alters the range of conduct or the class of persons that the law punishes"—generally applies retroactively. *Schriro*, 124 S.Ct. at 2522–23. Morris concedes that *Booker* did

not announce a substantive rule, *Brief of Appellant*, at 19, and we so hold. *See United States v. Sanders*, 247 F.3d 139, 147 (4th Cir.2001) (holding that *Apprendi* rule is procedural rather than substantive); *see also Bellamy*, 411 F.3d at 1187 (noting that "every court to examine the issue has concluded that *Booker* represents a 'procedural rule'").

*Booker* rule is in fact new, then we must consider whether the rule is of "watershed" magnitude. *Beard,* 124 S.Ct. at 2510.

As we have previously noted, every circuit court of appeals to have considered this issue has held that *Booker* does not apply retroactively. We reach the same conclusion.

### A.

Applying the *Teague* analysis, we must first determine whether Morris' conviction became final prior to the 2005 decision in *Booker.* A judgment of conviction "becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." *Clay v. United States,* 537 U.S. 522, 525, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003). Because we affirmed Morris' conviction in June 2003, and she did not seek certiorari review, her conviction became final in 2003, well before *Booker* (or *Blakely* ) was decided. Morris does not contend otherwise.

### B.

■ We next must determine whether the rule announced in *Booker* is actually "new." Generally, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague,*

489 U.S. at 301, 109 S.Ct. 1060. In determining whether precedent dictated the *Booker* rule in 2003 when Morris' conviction became final, we must "assay the legal landscape" as it then existed and ascertain whether "the unlawfulness of [Morris' sentence] was apparent to all reasonable jurists." *Beard,* 124 S.Ct. at 2511 (citation and internal punctuation omitted). Stated otherwise, we must determine "whether it would have been objectively unreasonable, under the law existing at that time, for a judge to reach a contrary result to that subsequently reached" in *Booker. O'Dell v. Netherland,* 95 F.3d 1214, 1223–24 (4th Cir.1996) (en banc), *affirmed,* 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997).

Morris contends that the rule announced in *Booker* was dictated by *Apprendi* and, therefore, was not new in 2003.[7] We disagree. Initially, we note that the Court in *Booker* appears to have viewed its rule as being new because it expressly held that the rule must apply to all cases on direct review, and in doing so it quoted *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), for the proposition that " '[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final. . . .' " *Booker,* 125 S.Ct. at 769. As the Sixth Circuit has recognized, "[t]his discussion would be wholly unnecessary had the rule been dic-

---

7. Morris places great emphasis on the Court's language in *Blakely* that it was "apply[ing]" the rule of *Apprendi* and in *Booker* that it was "reaffirm[ing]" the *Apprendi* rule. However, the Court has made clear that language of this type is not necessarily dispositive in the "new rule" analysis. *See Butler v. McKellar,* 494 U.S. 407, 415, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990) ("[T]he fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether the current

decision is a 'new rule' under *Teague.* Courts frequently view their decisions as being 'controlled' or 'governed' by prior opinions even when aware of reasonable contrary conclusions reached by other courts."); *see also O'Dell,* 95 F.3d at 1235 ("The point of the *Butler* passage, as we understand it, is that the hortatory *dicta* used in opinions to underscore their faithfulness to precedent should not be considered binding upon the separate question of whether they announced a new rule under *Teague.*").

tated by precedent." *Humphress,* 398 F.3d at 861.

In any event, "[i]t cannot be said that the result in *Booker* was apparent to 'all reasonable jurists;' in *Booker* itself, [four dissenting Justices] undertook to explain why the holding in *Booker* was not compelled by *Apprendi* or *Blakely*." *Guzman,* 404 F.3d at 142. These dissenting Justices argued that "[l]egal logic" did not require the extension of *Apprendi* (and *Blakely* ) to the Guidelines "for there are key differences" that "offer a principled basis for refusing to extend *Apprendi*'s rule...." *Booker,* 125 S.Ct. at 805–07 (Breyer, J., dissenting in part). Although not dispositive, the fact that these Justices dissented supports the conclusion that the *Booker* rule is new. *See, e.g., Beard,* 124 S.Ct. at 2512–13.

Moreover, between the time that *Apprendi* and *Blakely* were decided, we expressly rejected the argument that *Apprendi* applied to sentences under the Guidelines (*i.e.,* the *Booker* rule), holding in *Kinter* that "[b]ecause *Apprendi* does not apply to a judge's exercise of sentencing discretion within a statutory range, the current practice of judicial factfinding under the Guidelines is not subject to the *Apprendi* requirements—at least so long as that factfinding does not enhance a defendant's sentence beyond the maximum term specified in the substantive statute." 235 F.3d at 201. Additionally, after *Blakely* was decided, the fact "[t]hat the federal judiciary [was] deeply divided on the issue of whether the rule announced in *Blakely* applies to the ... Guidelines lends further support to the conclusion that *Booker* announced a new rule;" that is to say, "not all reasonable jurists believed that the *Booker* rule was compelled by *Blakely*." *Humphress,* 398 F.3d at 861; *see also Cruz,* 423 F.3d at 1120 ("Given the dissenting opin-

ions in *Booker* and the previous cases, it is apparent that the rule was not in fact 'apparent to all reasonable jurists,' and thus, under the Supreme Court's definition, it was in fact a 'new rule.' "). Of course, a majority of this court ruled in *Hammoud* that *Blakely* did not affect Guidelines sentencing. 378 F.3d at 426.

C.

 Because *Booker* announced a new rule of criminal procedure, we must now determine whether the rule is one of watershed magnitude. To qualify as a watershed rule, "a new rule must meet two requirements: Infringement of the rule must seriously diminish the likelihood of obtaining an accurate conviction, and the rule must alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *Tyler v. Cain,* 533 U.S. 656, 665, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (citations and internal punctuation omitted). As the Court explained in *Schriro,* the class of watershed procedural rules is "extremely narrow, and it is unlikely that any has yet to emerge." 124 S.Ct. at 2523 (citations and internal punctuation omitted). The Court has pointed to *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which established the right to counsel in criminal trials for serious offenses, as the type of case that announced a watershed rule. *See Beard,* 124 S.Ct. at 2514.

Morris argues that the *Booker* rule qualifies as a watershed rule because it "prevent[s] a judge from [increasing] a defendant's sentence based on facts never found by a jury beyond a reasonable doubt or admitted by the defendant," and it is therefore "critical to the accuracy of the findings on which fair criminal sentences are based...." *Brief of Appellant,* at 20,

23.[8] We believe that Morris' argument is foreclosed by our decision in *Sanders*, in which we considered the retroactivity of *Apprendi*. After applying the *Teague* analysis and concluding that *Apprendi* announced a new rule of criminal procedure, we specifically rejected an argument virtually identical to Morris'. We recognized that the *Apprendi* rule is "dual-faceted" inasmuch as it requires that "a jury, rather than a judge, must determine the facts supporting a statutory enhancement, and that this finding must be made beyond a reasonable doubt, rather than by a preponderance of the evidence." 247 F.3d at 148. However, we concluded that "[t]hese rules . . . are not the types of watershed rules implicating fundamental fairness that require retroactive application on collateral attack." *Id.* Because *Booker* is an application of *Apprendi*, albeit in a different context, we conclude that *Sanders* controls.

Apart from *Sanders*, we conclude in any event that the *Booker* rule is not a watershed rule. As we have noted, the practical net result of *Booker* is minimal. On this point, we agree with the Seventh Circuit's conclusion:

> *Booker* does not in the end move any decision from judge to jury, or change the burden of persuasion. The remedial portion of *Booker* held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application. As a practical

matter, then, petitioners' sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system. That is not a "watershed" change that fundamentally improves the accuracy of the criminal process.

*McReynolds*, 397 F.3d at 481; *see also Lloyd*, 407 F.3d at 615 ("By creating an advisory federal sentencing regime, the *Booker* Court did not announce a new rule of criminal procedure that significantly increases the 'certitude' or 'accuracy' of the sentencing process.").

### III

■ The rule announced in *Booker* is a new rule of criminal procedure, but it is not a watershed rule. Accordingly, the rule is not available for post-conviction relief for federal prisoners, like Morris, whose convictions became final before *Booker* (or *Blakely*) was decided. Accordingly, we affirm the district court's order denying Morris relief.

*AFFIRMED*

---

**8.** Morris points to our statement in *Kinter* that if the Guidelines were affected by *Apprendi*, then "*Apprendi* would indeed work a watershed change upon the federal courts' current sentencing practices." 235 F.3d at 200. Morris' reliance on this statement is misplaced for at least two reasons. First, we were not conducting the *Teague* analysis. Second, we hypothesized that the change

would be a watershed change because "[d]istrict courts would no longer be permitted to make factual determinations that had the effect, in any real sense, of enhancing the defendant's sentence, and the . . . Guidelines would thus be rendered essentially useless. . . ." 235 F.3d at 200. Of course, *Booker* did not have the dramatic effect about which we hypothesized.