Affirmed by published opinion. Judge MOTZ wrote the majority opinion, in which Judge DIAZ joined. Senior Judge DAVIS wrote a dissenting opinion.
DIANA GRIBBON MOTZ, Circuit Judge:
Jose Valdovinos, a citizen of Mexico, pled guilty to unlawfully entering the United States after being deported, in violation of 8 U.S.C. § 1326(a). The district court increased Valdovinos’s sentence on the ground that he illegally reentered the country after a prior North Carolina conviction for felony drug trafficking, i.e., a drug offense punishable by more than one year in prison. See U.S.S.G. § 2L1.2(b)(l)(B). Valdovinos challenges his sentence enhancement, arguing that this prior conviction was not punishable by more than a year in prison because he was sentenced pursuant to a plea agreement *324 that capped his prison term at 12 months. Accordingly, he contends, the prior North Carolina conviction was not a felony for Guidelines purposes. For the reasons that follow, we affirm.
I.
Valdovinos entered the United States in November 2008 and quickly ran afoul of the law. Authorities in Mecklenburg County, North Carolina arrested him the following month on drug trafficking charges. Valdovinos pled guilty in state court to four counts of selling heroin, each a Class G felony offense under North Carolina law. See N.C. GemStat. § 90-95(a) & (b). Because Valdovinos had no criminal record, his prior-record level was I. The state court made no findings of either aggravation or mitigation. Based on these facts, the parties agree that Valdovinos’s prior conviction carried a maximum statutory sentence of 16 months in prison pursuant to North Carolina’s Structured Sentencing Act (“the Act”). See N.C. Gen. Stat. § 15A-1340.17(c) & (d) (codifying North Carolina sentencing scheme) (version effective until November 2009).[1]
But Valdovinos was sentenced pursuant to a plea agreement that, upon acceptance by the court, established a binding sentencing range of 10 to 12 months’ imprisonment. Under state law, once the trial judge accepted the plea, the judge had to sentence Valdovinos within the agreement’s recommended range. See N.C. GemStat. § 15A-1023(b) (codifying role of sentencing judge in plea arrangements relating to sentence). Of course, the judge remained free to reject the recommended range along with Valdovinos’s guilty plea. See id. But in this case the judge elected to accept the agreement and accordingly sentenced Valdovinos to 10 to 12 months in prison. In January 2010, after serving his sentence, Valdovinos was removed to Mexico.
In May 2013, Valdovinos reentered the United States without permission and returned to North Carolina. He was arrested a few weeks later for resisting a public officer, and charged with illegal reentry by a removed alien in violation of 8 U.S.C. § 1326(a). He pled guilty to the charge.
In preparation for Valdovinos’s sentencing, a probation officer prepared a presen-tence report calculating Valdovinos’s recommended term of imprisonment for this reentry conviction. The probation officer recommended a base offense level of 8 and a 12-point enhancement on the ground that Valdovinos had previously been convicted of a “felony drug trafficking offense,” i.e., his 2009 North Carolina conviction for selling heroin. See U.S.S.G. § 2L1.2(b)(l)(B). After a 3-point reduction for acceptance of responsibility, Valdo-vinos’s total recommended offense level was 17. Combined with a criminal history category of II, this offense level produced a Guidelines range of 27 to 33 months’ imprisonment.
Valdovinos objected to the felony drug-offense enhancement. He noted that under the Guidelines, a “felony” is “any federal, state, or local offense punishable by imprisonment for a term exceeding one year.” U.S.S.G. § 2L1.2 cmt. n. 2. Valdo-vinos argued that because his guilty plea to the prior North Carolina conviction was entered as part of an agreement that *325 capped his sentence at 12 months once the court accepted his plea, that conviction was not punishable by more than one year in prison. Consequently, he maintained, his prior conviction for selling heroin did not constitute a felony under the Guidelines and so could not serve as a predicate offense to enhance his federal sentence for illegal reentry.
The district court rejected the argument. It recognized that the plea agreement reduced Valdovinos’s prior North Carolina sentence. The court found, however, that this did not alter the fact that the offense was punishable by imprisonment exceeding one year because the maximum statutory penalty of 16 months remained unchanged. The court therefore applied the enhancement and sentenced Valdovinos to 27 months in prison. This appeal followed.
II.
Valdovinos contends that the district court erred in enhancing his sentence on the basis of his prior state conviction. As he argued in the district court, Valdovi-nos again claims that, due to his plea agreement, his North Carolina conviction was not punishable by more than a year in prison and therefore does not qualify as a felony under Section 2L1.2(b)(l)(B) of the Guidelines. We review de novo the question whether a prior state conviction constitutes a predicate felony conviction for purposes of a federal sentence enhancement. United States v. Jones, 667 F.3d 477, 482 (4th Cir.2012).
A.
Our approach to determining whether a prior North Carolina conviction was punishable by a prison term exceeding one year (and thus constitutes a federal sentencing predicate) has changed in recent years. We once answered that question by considering “the maximum aggravated sentence that could be imposed for that crime upon a defendant with the worst possible criminal history.” United States v. Harp, 406 F.3d 242, 246 (4th Cir.2005). As a result, many defendants who, based on their own criminal histories, could not possibly have been sentenced to prison for more than a year were deemed to have been convicted of predicate felonies and so sentenced to enhanced federal prison terms. We faithfully followed that precedent in numerous cases, including United States v. Simmons, 340 Fed.Appx. 141 (4th Cir.2009).
In 2010, however, the Supreme Court decided Carachuri-Rosendo v. Holder, 560 U.S. 563, 130 S.Ct. 2577, 177 L.Ed.2d 68 (2010). The Court held in Caraehuri that, for purposes of the Immigration and Nationality Act, a prior conviction constitutes an “aggravated felony” — i.e., a crime for which the maximum term of imprisonment exceeds one year — only if the defendant was “actually convicted of a crime that is itself punishable as a felony under federal law.” Id. at 582, 130 S.Ct. 2577. The Court explained that whether the defendant’s conduct underlying his prior conviction hypothetically could have received felony treatment is irrelevant. See id. at 576-81, 130 S.Ct. 2577. The critical question is simply whether he was convicted of an offense punishable by more than one year in prison.
The Supreme Court then vacated our judgment in Simmons and remanded the case to us for “further consideration in light of Carachuri-Rosendo.” See 561 U.S. 1001, 130 S.Ct. 3455, 177 L.Ed.2d 1048 (2010). On remand, we recognized that, although Caraehuri arose in the immigration context, its rationale undercut our use of “an imagined worst-case offender” to calculate a defendant’s maximum term of imprisonment for a prior conviction. United States v. Simmons, 649 F.3d 237, 249 (4th Cir.2011) (en banc). Accord *326 ingly, we held that a defendant’s prior North Carolina conviction was punishable by imprisonment exceeding one year (and thus a federal sentencing predicate) only if the particular defendant’s crime of conviction was punishable under North Carolina law by a prison term exceeding one year. Id.
Valdovinos contends that Carachuri and Simmons support his argument that his prior conviction for selling heroin does not constitute a felony under the Guidelines. In particular, he seizes on the instruction in those cases that a court must “look to the conviction itself as [its] starting place” when considering whether a prior conviction qualifies as a federal sentencing predicate. Carachuri, 560 U.S. at 576, 130 S.Ct. 2577; accord Simmons, 649 F.3d at 242. Valdovinos argues that because the state court could not have imposed a sentence greater than 12 months once it accepted his guilty plea — that is, once Valdo-vinos was convicted of his drug offense— this conviction was not punishable by imprisonment exceeding one year. Appellant’s Br. at 12-13. Accordingly, Valdovi-nos claims that his prior North Carolina conviction is not a felony under Carachuri and Simmons because “[t]here was no point when [his] conviction exposed him to a sentence greater than one year’s imprisonment.” Reply Br. at 8.
Valdovinos’s argument is clever, but unpersuasive. North Carolina’s unique sentencing regime, not a plea agreement, determines whether a defendant’s conviction is punishable by imprisonment exceeding one year and so qualifies as a federal sentencing predicate. Simmons, 649 F.3d at 240.
B.
North Carolina’s Structured Sentencing Act “creates felony sentences strictly contingent on two factors: the designated ‘class of offense’ and the offender’s ‘prior record level.’ ” Id. (quoting N.C. Gen.Stat. § 15A-1340.13(b)). The sentencing judge calculates the offender’s prior record level by adding together the points, assigned by the Act, for each of the offender’s prior convictions. N.C. GemStat. § 15A-1340.14(a). The judge then matches the offense class and prior record level using a statutory table, which provides three sentencing ranges — a mitigated range, a presumptive range, and an aggravated range. Id. § 15A-1340.17(c). The judge must sentence the defendant within the presumptive range unless the judge makes written findings of aggravating or mitigating factors. Id. §§ 15A-1340.13(e) & 15A-1340.16(c). And the judge may sentence a defendant within the aggravated range only if the state provides the defendant notice of its intent to prove aggravating factors, and a jury finds such factors beyond a reasonable doubt or the defendant pleads to their existence. Id. § 15A-1340.16 (a6). Once the judge selects the applicable range, the judge must choose the defendant’s minimum sentence from within that range; a separate statutory chart provides the corresponding maximum term. Id. § 15A-1340.17(d).
Critically, North Carolina’s sentencing scheme is not a discretionary, guidelines system. Rather, “it mandates specific sentences,” so “no circumstances exist under the Structured Sentencing Act in which a North Carolina judge may impose a sentence that exceeds the top of the range set forth in the Act.” Simmons, 649 F.3d at 244 (quotation marks and citation omitted). Determining the maximum punishment for an offender’s prior conviction, then, simply “requires examination of three pieces of evidence: the offense class, the offender’s prior record level, and the applicability of the aggravated sentencing range.” Id. at 247, n. 9.
In Simmons, based on these three pieces of evidence, the Structured Sentenc *327 ing Act authorized a maximum sentence of only 8 months’ community punishment (no imprisonment) for the defendant’s prior conviction. Id. at 241. Because Simmons’s prior offense was not punishable under North Carolina law by more than one year in prison, it did not qualify as a felony predicate for a federal sentence enhancement. Id. at 248.
In Valdovinos’s case, by contrast, the Structured Sentencing Act authorized a maximum sentence of 16 months’ imprisonment for his prior conviction. That the sentence ultimately imposed pursuant to his plea deal was 10 to 12 months’ imprisonment is irrelevant. See United States v. Edmonds, 679 F.3d 169, 176 (4th Cir.2012) (reaffirming that “the qualification of a prior conviction [as a sentencing predicate] does not depend on the sentence [a defendant] actually received” but on the maximum sentence permitted), vacated on other grounds, — U.S. -, 133 S.Ct. 376, 184 L.Ed.2d 4, aff'd on remand, 700 F.3d 146 (4th Cir.2012). Valdovinos’s North Carolina conviction was punishable by imprisonment exceeding one year based on his prior record level, offense class, and sentencing range. It therefore qualifies as a federal sentencing predicate.
Valdovinos’s contrary argument rests on a misreading of Carachuri and Simmons. Those cases direct that an offender’s conviction must serve as our “starting place” not because, as Valdovinos suggests, the moment of conviction (i.e., the moment the defendant enters his guilty plea) is a magical one. Rather, it is because the critical question for purposes of a federal sentence enhancement is whether the particular defendant’s prior offense of conviction was itself punishable by imprisonment exceeding one year. Carachuri, 560 U.S. at 576 & 582, 130 S.Ct. 2577; Simmons, 649 F.3d at 243; see also U.S.S.G. § 2L1.2 cmt. n. 2 (defining “felony” as “any federal, state, or local offense punishable by imprisonment for a term exceeding one year”) (emphasis added). Undoubtedly, Valdovinos’s prior offense of conviction — sale of heroin — was itself punishable by imprisonment for more than one year.
Simmons, and Carachuri before it, teach that we may not measure a defendant’s maximum punishment based on a hypothetical charge, a hypothetical criminal history, or other “facts outside the record of conviction.” Simmons, 649 F.3d at 244 (quoting Carachuri, 560 U.S. at 582, 130 S.Ct. 2577). But we do not do so in holding that North Carolina’s “carefully crafted sentencing scheme,” id. at 249, not a negotiated plea agreement, determines whether Valdovinos’s prior conviction qualifies as a federal sentencing predicate. In looking to the Structured Sentencing Act to establish Valdovinos’s maximum sentence, we consider only Valdovinos’s own offense class and criminal history, and thus attribute to him only the crime of which he was “actually convicted.” Carachuri, 560 U.S. at 582, 130 S.Ct. 2577 (emphasis omitted). This is the approach mandated by Carachuri and Simmons.
III.
Nonetheless, Valdovinos contends that a plea agreement of the sort he negotiated— that binds the judge to a sentence once the judge accepts the plea — displaces North Carolina’s Structured Sentencing Act and establishes the maximum punishment for every defendant sentenced pursuant to such a deal. The argument fails. Precedent offers no support for the outcome Valdovinos seeks. In fact, that outcome is fundamentally at odds with important principles animating our decision in Simmons and North Carolina’s sentencing scheme.
A.
A negotiated plea agreement differs in critical respects from a legislative mandate *328 like the Structured Sentencing Act. While a plea agreement reflects only the interests of the prosecutor and individual defendant, the Act refleets “North Carolina’s judgment as to the seriousness of a North Carolina crime.” Simmons, 649 F.3d at 249. And while, under a plea agreement, a defendant’s sentence hinges on merely the ability of the parties to reach a deal and the willingness of the sentencing judge to accept that deal, the Structured Sentencing Act ensures that objective, uniformly applicable factors determine each offender’s maximum punishment.
Thus, to determine an offender’s maximum sentence, Simmons instructs that in every case we look to the same three pieces of evidence: “the offense class, the offender’s prior record level, and the applicability of the aggravated sentencing range.” Id. at 247 n. 9. A plea agreement applies to just one case. Simmons’s instruction ensures that offenders with similar criminal backgrounds who commit similar crimes will be sentenced to similar prison terms. Of course, an individual plea agreement provides no similar assurance.
Moreover, in contrast to North Carolina’s mandatory sentencing scheme, under which a judge may never “impose a sentence that exceeds the top of the range set forth in the Act,” id. at 244 (quotation marks and citation omitted), a plea agreement’s recommended sentence is not the final word under North Carolina law. This is so because the sentencing judge remains free to reject the agreement.
Neither a defendant nor a prosecutor may “bind the State to the dispensation of a particular sentence ... until the trial judge has approved of the proposed sentence.” State v. Marlow, 334 N.C. 273, 432 S.E.2d 275, 279 (1993) (citation and alteration omitted); see also N.C. Gen. Stat. § 15A-1023(b). And “the prosecutor may rescind his offer of a proposed plea arrangement at any time before it is consummated by actual entry of the guilty plea and the acceptance and approval of the proposed sentence by the trial judge.” Marlow, 432 S.E.2d at 279 (emphasis omitted). “A decision by the judge disapproving a plea arrangement,” moreover, “is not subject to appeal.” N.C. GemStat. § 15A-1023(b). Accordingly, the state judge could have rejected Valdovinos’s plea agreement and required a sentence of up to 16 months in prison, the statutory maximum under the Act.
Valdovinos protests that this argument “ignores the most important procedural protection included in [the statute governing his plea agreement]: the defendant’s right to withdraw from the plea agreement and plead not guilty if the judge rejects the agreed sentence.” Reply Br. at 5-6. Certainly, a defendant has this right. The relevant North Carolina statute provides:
Before accepting a plea pursuant to a plea arrangement in which the prosecutor has agreed to recommend a particular sentence, the judge must advise the parties whether he approves the arrangement and will dispose of the case accordingly. If the judge rejects the arrangement, he must so inform the parties, refuse to accept the defendant’s plea of guilty or no contest, and advise the defendant personally that neither the State nor the defendant is bound by the rejected arrangement. The judge must advise the parties of the reasons he rejected the arrangement and afford them an opportunity to modify the arrangement accordingly.
N.C. GemStat. § 15A-1023(b) (emphasis added). We cannot, therefore, be sure what would have happened if the state judge had rejected Valdovinos’s plea. Perhaps Valdovinos would have withdrawn his plea, and perhaps a jury would have ac *329 quitted him of selling heroin in North Carolina. But the fact remains that Valdovi-nos, like countless other defendants, chose to plead guilty under a plea agreement that allowed him to avoid trial and its associated risk of a higher sentence than the agreement offered. And he pleaded guilty to an offense that carried a maximum sentence of 16 months in prison under North Carolina law. His conviction thus constitutes a proper sentencing predicate under the Guidelines.
B.
Valdovinos’s remaining arguments to the contrary are similarly unconvincing.
First, he contends that just as North Carolina prosecutors declined to pursue Simmons as an aggravated offender, Simmons, 649 F.3d at 245, so too they “declined to pursue [him] as a felon” by agreeing to a sentence capped at 12 months in prison. Appellant’s Br. at 17 (quotation marks omitted). Not so. Valdovinos was charged with, and pleaded guilty to, a North Carolina Class G felony offense. See N.C. Gen.Stat. § 14-1(4) (defining felony as, inter alia, a crime “denominated as a felony by statute”). That prosecutors agreed to a lower sentence does not eliminate the fact that they did indeed “pursue [him] as a felon.”
In a similar vein, Valdovinos claims that “the prosecutor must have found the existence of mitigating circumstances in order to agree to a sentence of less than one year.” Appellant’s Br. at 17. But it is just as likely that the prosecutor agreed to the lower sentence to avoid the time and expense of trial.[2] And contrary to Valdo-vinos’s claim, it matters not that his maximum sentence under the Structured Sentencing Act would similarly have been 12 months if the parties had “obtained a mitigated-range sentence” based on judicial findings of mitigation rather than through plea negotiations. Id. Because a North Carolina sentencing judge “remain[s] free at all times to sentence [a defendant] to a presumptive prison term” despite the existence of mitigating factors, Valdovinos’s conviction would still have been punishable by imprisonment exceeding one year and so would have qualified as a sentencing predicate. United States v. Kerr, 737 F.3d 33, 38-39 (4th Cir.2013).
Finally, contrary to his suggestion, Valdovinos had ample notice of the consequences of his plea. Measuring his maximum sentence by reference to the Structured Sentencing Act therefore does not rob him of the benefits of that plea. This case does not, for example, involve a defendant who negotiated a plea to a lesser charge, only to have a later sentencing court impose an enhancement on the basis of the defendant’s underlying conduct or initial indictment on a greater charge. That approach might unfairly deprive defendants of the benefits of their negotiated pleas, because it is “unfair to impose a sentence enhancement as if the defendant had pleaded guilty to [a sentencing predicate]” when in fact he did not. Descamps v. United States, — U.S. -, 133 S.Ct. 2276, 2289, 186 L.Ed.2d 438 (2013) (quotation mark and citation omitted).
Here, however, Valdovinos did plead guilty to a sentencing predicate, i.e., a felony punishable by more than one year. Had he wished to avoid a conviction punishable under North Carolina law by imprisonment exceeding one year, he should have sought a plea to a lesser crime.[3] *330 Perhaps he did so, and perhaps the prosecutor refused. Whatever the case, Valdo-vinos ultimately elected to plead guilty to an offense punishable under state law by a maximum term of 16 months in prison. He knew this, or should have known it, at the time of his conviction and so cannot now claim that the district court unfairly attributed to him this predicate offense.
IV.
For the foregoing reasons, we hold that North Carolina’s legislatively mandated sentencing scheme, not a recommended sentence hashed out in plea negotiations, determines whether an offender’s prior North Carolina conviction was punishable by more than a year in prison. Because Valdovinos’s offense of conviction was indeed punishable by imprisonment exceeding one year, it qualifies as a predicate felony under Section 2L1.2(b)(l)(B) of the Guidelines. We appreciate the fervor and policy arguments of our friend in dissent. Indeed, we can agree with many of the latter. What we cannot agree with is that “application of relevant precedent” does not require the result here. Carachuri and Simmons do just that. The judgment of the district court is

AFFIRMED.

. In December 2011, the North Carolina legislature amended the Act to provide for higher maximum terms of imprisonment. See N.C. Gen.Stat. § 15A-1340. 17(d). The maximum sentence for an offender in Valdovinos’s position (Class G felony, prior record level of I, and no findings of mitigation or aggravation) is now 25 months’ imprisonment. Valdovi-nos was convicted before the amendment, however, so the previous maximum penalty of 16 months applies here.

. Of course, the prosecutor knew that Valdo-vinos faced immediate deportation upon his release from prison, a fact that might also have played a role in sentencing negotiations.

. North Carolina classifies felonies in descending order of seriousness from Class A (most serious) through Class I (least serious). See N.C. Gen.Stat. § 15A-1340.17(c). At the time of Valdovinos's conviction, a North Car *330 olina Class H felony offense carried a maximum (presumptive) sentence of only eight months in prison for an offender with his criminal history. See N.C. Gen.Stat. § ISA-1340.17 (version effective until November 30, 2009).