**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4504

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JOSE GEOVANI BERCIAN-FLORES, a/k/a Jose Jeovany Bercian-Flores, a/k/a Jose Geovani Flores-Mendosa, a/k/a Napolean Villalta,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, Chief District Judge. (3:12-cr-00208-FDW-1)

Argued: January 29, 2015                  Decided: May 14, 2015

Before DUNCAN, WYNN, and THACKER, Circuit Judges.

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Judge Duncan and Judge Thacker joined.

**ARGUED:** Richard Lamb Brown, Jr., LAW OFFICES OF RICHARD L. BROWN, JR., Monroe, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Anne M. Tompkins, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

WYNN, Circuit Judge:

Defendant Jose Bercian-Flores pled guilty to re-entering the United States as an illegal alien. At sentencing, the district court imposed a twelve-level enhancement based on Bercian-Flores's 1997 felonious conviction for unlawfully transporting aliens, which the district court determined was an "offense punishable by imprisonment for a term exceeding one year" under the U.S. Sentencing Guidelines. U.S.S.G. § 2L1.2 cmt. n.2.

On appeal, Bercian-Flores argues that this Court's ruling in United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc), precludes the enhancement because the Guidelines range for his 1997 conviction under the then-mandatory Sentencing Guidelines was zero to six months' imprisonment. Because the judge who sentenced Bercian-Flores in 1997 had discretion to sentence him for up to five years, we conclude that the district court did not err in imposing the enhancement.

I.

In 1997, Bercian-Flores pled guilty to transportation of an alien in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) in the United States District Court for the Southern District of Texas. The offense carried a statutory five-year maximum term of imprisonment. See 8 U.S.C. §§ 1324(a)(1)(A)(ii) and

2

(a)(1)(B)(ii).  However, the Guidelines range for Bercian-Flores's 1997 conviction was calculated as zero to six months, and he was sentenced to only 107 days' imprisonment.  Bercian-Flores was removed to El Salvador on August 27, 1997.

Over a decade later, in May 2012, Bercian-Flores was arrested in Mecklenburg County, North Carolina and charged with being found in the United States following his removal subsequent to the commission of a felony in violation of 8 U.S.C. §§ 1326(a) and (b)(1).  He pled guilty to the charge without entering into a plea agreement.

The probation office prepared a Presentence Report ("PSR"), which calculated a base offense level of eight and recommended a twelve-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(vii) ("Unlawfully Entering or Remaining in the United States") based on Bercian-Flores's 1997 alien-smuggling conviction.  Bercian-Flores raised objections to the PSR, arguing that based upon this Court's decision in Simmons, his 1997 conviction did not constitute a felony for purposes of U.S.S.G. § 2L1.2(b)(1) because he could not have received a sentence of more than one year under the mandatory Sentencing Guidelines in effect in 1997.  The district court denied Bercian-Flores's objection, reasoning that Simmons had expressly distinguished North Carolina's legislatively mandated sentencing regime from a guidelines system.

3

The district court therefore held that Bercian-Flores's statutory maximum sentence, a five-year term of imprisonment, as opposed to his Guidelines range, zero to six months of imprisonment, controlled.  After crediting Bercian-Flores with a three-level reduction for acceptance of responsibility, leaving him with an offense level of seventeen and a recommended Guidelines range of twenty-seven to thirty-three months, the district court sentenced Bercian-Flores to thirty months' imprisonment.  Bercian-Flores appealed.

## II.

The U.S. Sentencing Guidelines prescribe a twelve-level enhancement for defendants who unlawfully re-enter the United States "after . . . a conviction for a felony that is . . . an alien smuggling offense."  U.S.S.G. § 2L1.2(b)(1)(A)(vii).  The Guidelines define "felony" as "any federal, state, or local offense <u>punishable by imprisonment for a term exceeding one year</u>."  U.S.S.G. § 2L1.2 cmt. n.2 (emphasis added).  We review a district court's interpretation of the U.S. Sentencing Guidelines de novo.  <u>United States v. McManus</u>, 734 F.3d 315, 318 (4th Cir. 2013).

4

III.

Bercian-Flores argues that the district court erred in imposing the twelve-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(vii) because his 1997 conviction was not punishable by a term of imprisonment exceeding one year. Specifically, Bercian-Flores contends that the district court did not have authority to sentence him to more than six months because the Guidelines range for his 1997 conviction was zero to six months, and in 1997 the Guidelines were mandatory. See United States v. Booker, 543 U.S. 220, 233 (2005). Bercian-Flores analogizes the pre-Booker Sentencing Guidelines to the North Carolina Structured Sentencing Act at issue in Simmons. He argues that the top sentence in his pre-Booker Guidelines range should guide our analysis of whether his 1997 conviction constitutes a felony for purposes of U.S.S.G. § 2L1.2(b)(1)(A)(vii).

A.

Under the sentencing regime in which Bercian-Flores was sentenced in 1997, the U.S. Sentencing Guidelines were mandatory. See Booker, 543 U.S. at 233 ("The Guidelines as written . . . are not advisory; they are mandatory and binding on all judges."). However, the Guidelines did give discretion to district courts to depart upward from the applicable Guidelines range under certain circumstances.

5

Specifically, U.S.S.G. § 5K2.0 (1997) enabled a sentencing judge to "impose a sentence outside the range established by the applicable guideline" if the judge found an aggravating circumstance not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. Guideline 5K2.0 further provided that such circumstances "[could not], by their very nature, be comprehensively listed and analyzed in advance," and that the "[p]resence of any such factor may warrant departure from the guidelines . . . , in the discretion of the sentencing court." Id. Additionally, findings warranting an upward departure need not have been found by a jury or pled to by the defendant; rather a sentencing judge had discretion to depart upwards from the Guidelines range so long as the judge found aggravating facts by a preponderance of the evidence. See United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005) (recognizing that, both before and after Booker, decisions about sentencing factors are made by judges on the preponderance of the evidence) (citing McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005)).

B.

In the case upon which Bercian-Flores principally relies, United States v. Simmons, 649 F.3d 237, we considered under what circumstances a prior North Carolina conviction was punishable

6

by a prison term exceeding one year.[1]  649 F.3d at 239.  Under the North Carolina Structured Sentencing Act, sentences were contingent on two factors: 1) the designated "class of offense" and 2) the offender's "prior record level."  Id. at 240.  Each of those factors was established by statute.  Once a judge determined the defendant's prior record level, the defendant was then sentenced pursuant to a "statutory table, which provides three possible sentencing ranges—a mitigated range, a presumptive range, and an aggravated range."  Id.  The presumptive range governed unless the judge made written findings that identified specific factors designated by the Act that permitted a departure to the aggravated or mitigated range. Id.

Notably, under the Structured Sentencing Act, "[a] judge may select from the aggravated range only if the State has provided a defendant thirty-days' notice of its intent to prove the necessary aggravating factors and a jury has found beyond a reasonable doubt (or the defendant has pled to) the existence of

---

[1] Our task in Simmons was to determine whether Simmons's prior North Carolina conviction constituted a "felony drug offense" under the Controlled Substances Act ("CSA"), which mandates a term of imprisonment of at least ten years if the offense conduct occurred "after a prior conviction for a felony drug offense has become final."  21 U.S.C. § 841(b)(1)(B). Similarly to the Guideline at issue in this case, the CSA defines "felony drug offense" as a drug-related "offense that is punishable by imprisonment for more than one year."  21 U.S.C. § 802(44).

those factors." Id. Once the judge identified the appropriate range, the Structured Sentencing Act required the judge to choose a sentence from within that range. Id. While the judge, "[i]n rare cases" could impose a lesser sentence upon a finding of "extraordinary mitigating factors," the judge had "no discretion to impose a more severe sentence even in extraordinary cases." Id. at 240 n.2 (emphasis added).

Before Simmons, when assessing whether a defendant's prior North Carolina offense was punishable by a prison term greater than one year we looked to "the maximum aggravated sentence that could be imposed for that crime upon a defendant with the worst possible criminal history." United States v. Harp, 406 F.3d 242, 246 (4th Cir. 2005). However, the Supreme Court's 2010 decision in Carachuri-Rosendo v. Holder, 560 U.S. 563 (2010), led us to reconsider that approach.

In Carachuri, the Supreme Court examined a provision of the Immigration and Nationality Act that permitted an alien to seek cancellation of removal where he "has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a)(3). Aggravated felonies as defined by the Act were limited to crimes for which the "maximum term of imprisonment authorized" is "more than one year." Carachuri, 560 U.S. at 567 (quoting 18 U.S.C. § 3559(a)). Carachuri had received a twenty-day sentence for possessing less than two ounces of marijuana in violation of

8

Texas law and a ten-day sentence for possessing a Xanax without a prescription. The government argued that, hypothetically, had Carachuri faced federal prosecution for that offense, he could have been sentenced to two years' imprisonment. Therefore, the government contended that his offense was "punishable" by imprisonment for more than one year.

The Supreme Court unanimously rejected this argument. Focusing on the INA's use of the phrase "convicted of a[n] aggravated felony," the Supreme Court reasoned that the "text thus indicates that we are to look to the conviction itself as our starting place." Id. at 576. In other words, whether the conduct underlying the defendant's prior conviction hypothetically could have received felony treatment was irrelevant. See id. at 576-81. Thus the dispositive question for determining whether a defendant committed an aggravated felony was simply whether he was actually convicted of an offense punishable by more than one year in prison.

Applying this reasoning in Simmons, we held that a prior North Carolina conviction was punishable by imprisonment exceeding one year only if the particular defendant's crime of conviction was punishable under North Carolina law by a prison term exceeding one year.

9

C.

Bercian-Flores likens the pre-Booker U.S. Sentencing Guidelines to the Structured Sentencing Act, and contends that under Simmons, his 1997 conviction was not punishable by a term of imprisonment exceeding one year because the top of his mandatory Guidelines range for that conviction was six months.

Bercian-Flores's argument has some intuitive appeal. In many ways, the pre-Booker U.S. Sentencing Guidelines were no less mandatory than North Carolina's Structured Sentencing Act. See, e.g., Mistretta v. United States, 488 U.S. 361, 391 (1989) ("[T]he Guidelines bind judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases."). While sentencing judges had discretion to depart upwards from a Guidelines range, in Booker the Supreme Court characterized that discretion as exceedingly narrow:

> At first glance, one might believe that the ability of a district judge to depart from the Guidelines means that she is bound only by the statutory maximum. . . . Importantly, however, departures are not available in every case, and in fact are unavailable in most. In most cases, as a matter of law, the Commission will have adequately taken all relevant factors into account, and no departure will be legally permissible. In those instances, the judge is bound to impose a sentence within the Guidelines range.

543 U.S. at 234.

Bercian-Flores contends that the judge who sentenced him for his 1997 alien smuggling conviction found no aggravating

10

factors that warranted an upward departure from the Guidelines range and, therefore, was no less "bound to impose a sentence within the Guideline range," which in his case was less than one year. Id. Bercian-Flores also points to language in the Simmons opinion indicating that consideration of hypothetical aggravating factors was not appropriate when determining a defendant's maximum sentence under the Structured Sentencing Act. In Simmons, we stated that

> Carachuri . . . forbids us from considering hypothetical aggravating factors when calculating Simmons's maximum punishment. We again focus first on Simmons's "conviction itself," Carachuri, 130 S. Ct. at 2586, and his conviction makes clear that he was neither charged with nor convicted of an aggravated offense, and that he therefore could not receive a sentence exceeding one year's imprisonment.

649 F.3d at 244 (emphasis added). Bercian-Flores contends that, as in Simmons, the sentencing judge made no factual findings that warranted an upward departure from his zero-to-six-months Guidelines range, and that we are prohibited from considering such "hypothetical aggravating factors" when assessing his maximum sentence. Id. at 244.

Even if we were inclined to extend our holding in Simmons in the manner that Bercian-Flores requests, we would be precluded from doing so by the Supreme Court's ruling in United States v. Rodriquez, 553 U.S. 377 (2008). In Rodriquez, the Supreme Court considered whether Washington state's mandatory

11

sentencing guidelines could cap the sentence for a conviction such that it would not qualify as a predicate felony for purposes of 18 U.S.C. § 924(e)(1). The Court held that the "maximum term of imprisonment . . . prescribed by law" for an offense is not "the top sentence in a guideline range." Id. at 390-91. The Court reasoned that "guidelines systems typically allow a sentencing judge to impose a sentence that exceeds the top of the guidelines range under appropriate circumstances." Id. at 390. The Supreme Court directly referenced U.S. Sentencing Guideline § 5K2.0, stating that the Guidelines permit upward departures in the same manner as "all of the mandatory guidelines systems in existence at the time of the enactment of the [Armed Career Criminals Act] provision at issue in this case." Id. (emphasis added).

In Simmons we distinguished the mandatory guideline system at issue in Rodriquez from the legislatively mandated system that North Carolina adopted. We explained that the Structured Sentencing Act "does not establish a 'guidelines system[ ]'; rather, it mandates specific sentences." Simmons, 648 F.3d at 244 (citing State v. Norris, 630 S.E.2d 915, 917–18 (N.C. 2006)). Unlike the guidelines systems referred to in Rodriquez, "no circumstances exist under the Structured Sentencing Act in which a North Carolina judge may 'impose a sentence that exceeds the top' of the 'range' set forth in the Act." Simmons, 649

12

F.3d at 244 (quoting Rodriquez, 553 U.S. at 390). The Structured Sentencing Act thus served as "a legislative mandate and not as a 'guidelines system[ ].'" Id.

Rodriquez and our interpretation of it in Simmons foreclose the approach that Bercian-Flores asks us to adopt. As the Supreme Court made clear, the "maximum term of imprisonment . . . prescribed by law" for an offense is not "the top sentence in a guideline range." Rodriquez, 553 U.S. at 391. Bercian-Flores makes no attempt to distinguish Rodriquez, and we see no avenue for doing so.[2]

What is more, Bercian-Flores ignores crucial differences between North Carolina's Structured Sentencing Act and the mandatory pre-Booker federal sentencing regime. Under the Structured Sentencing Act, "an offender can receive an aggravated sentence only if" inter alia "a jury has found beyond a reasonable doubt (or the defendant has pled to) the existence of those factors." Simmons, 649 F.3d at 240. By contrast, the pre-Booker Sentencing Guidelines did not specify the aggravating factors that the judge was authorized to consider and further

---

[2] While it is true that Rodriquez was decided at a time when the U.S. Sentencing Guidelines were no longer mandatory, the Court's reasoning expressly applied to mandatory guidelines regimes. Indeed the Court's reference to Section 5K2.0 was designed to illustrate the type of discretion that sentencing judges have under mandatory systems. See Rodriquez, 553 U.S. at 390. Thus timing also provides no basis for distinguishing Rodriquez.

13

did not require that a jury find such factors beyond a reasonable doubt. See, e.g., Morris, 429 F.3d at 72.

Thus, even under the pre-Booker Guidelines, federal sentencing judges were not bound by the record of conviction and were not "mandated" to sentence the defendant in a particular range in the same way that North Carolina judges were. Rather, regardless of facts found by the jury or pled to by the defendant, under the pre-Booker Sentencing Guidelines, the sentencing judge had discretion to sentence a defendant above his or her applicable range up to the statutory maximum in appropriate circumstances.

Our recent decisions in United States v. Kerr, 737 F.3d 33 (4th Cir. 2013), and United States v. Valdovinos, 760 F.3d 322 (4th Cir. 2014), further support the conclusion that the statutory maximum sentence set by Congress, and not the top sentence in Bercian-Flores's Guidelines range, is determinative of whether his prior conviction constituted a predicate felony.

In Kerr, the defendant argued that his prior North Carolina state convictions did not qualify as predicate felonies for sentencing under the Armed Career Criminal Act, because the sentencing judge sentenced him within the mitigated range rather than the presumptive range of punishment under the Structured Sentencing Act. 737 F.3d at 34. The defendant's maximum sentence was eleven months based on his mitigated sentence range

14

as found by the sentencing judge and fourteen months under the presumptive range.  We held that the defendant's presumptive range determined his maximum term of imprisonment for purposes of the Armed Career Criminal Act, and, therefore, that his prior offense qualified as a predicate felony.  Even though the sentencing judge determined that mitigating factors in the defendant's case required a lower sentencing range, the fact that the court had discretion to sentence the defendant at a higher range controlled.  Id. at 38-39.

In Valdovinos, we considered whether a defendant's prior drug trafficking conviction qualified as a predicate felony where the defendant was sentenced pursuant to a plea agreement that "capped his prison term at 12 months."  760 F.3d at 324. We held that where the Structured Sentencing Act authorized a maximum sentence of sixteen months' imprisonment, the offense was punishable by a term of imprisonment exceeding one year even though the sentence ultimately imposed pursuant to his plea deal was for less than one year.  We explained that

> in contrast to North Carolina's mandatory sentencing scheme, under which a judge may never "impose a sentence that exceeds the top of the range set forth in the Act," a plea agreement's recommended sentence is not the final word under North Carolina law.  This is so because the sentencing judge remains free to reject the agreement.

Id. at 328 (quoting Simmons, 649 F.3d at 244).

15

Kerr and Valdovinos confirm that the salient question to be asked after Simmons is whether the sentencing judge could sentence a particular defendant to a term of imprisonment exceeding one year. In Simmons, the answer was no. The same cannot be said for Bercian-Flores. Even under the pre-Booker Sentencing Guidelines, the district court had discretion to sentence Bercian-Flores up to the statutory maximum of five years.

D.

At bottom, Bercian-Flores fails to appreciate that our holding in Simmons did not change the fact that the cornerstone of our predicate-felony analysis must be the defendant's offense of conviction. Valdovinos, 760 F.3d at 327 (citing Carachuri, 560 U.S. at 576 & 582). "'[T]he qualification of a prior conviction [as a sentencing predicate] does not depend on the sentence [a defendant] actually received' but on the maximum sentence permitted" for his offense of conviction. Valdovinos, 760 F.3d at 327 (quoting United States v. Edmonds, 679 F.3d 169, 176 (4th Cir. 2012), vacated on other grounds, 133 S. Ct. 376, aff'd on remand, 700 F.3d 146 (4th Cir. 2012)).

The U.S. Sentencing Guidelines—whether mandatory or advisory—cannot change a defendant's offense of conviction; that has been defined by Congress. Bercian-Flores was convicted of unlawfully transporting aliens in violation of 8 U.S.C. §

16

1324(a)(1)(B)(ii) (1994). Congress set the maximum term of imprisonment for that offense at five years.

## IV.

For the foregoing reasons, we hold that the statutory maximum term of imprisonment of five years set by Congress, and not the top sentence in Bercian-Flores's pre-Booker Sentencing Guidelines range, is determinative of whether he committed a predicate felony under U.S.S.G. § 2L1.2(b)(1)(A)(vii). Therefore the district court did not err in overruling Bercian-Flores's objection and imposing a twelve-level enhancement for Bercian-Flores's 1997 alien-smuggling conviction.

AFFIRMED